**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION and Margaret Hasselman, Plaintiffs,**

v.

**SAGE REALTY CORP., INC., and Angelo Palumbo, d/b/a Monahan Commercial Cleaners, Inc., Defendants.**

**No. 78 Civ. 4607.**

United States District Court, S. D. New York.

June 6, 1980.

Leroy T. Jenkins, Jr., Equal Employment Opportunity Commission, Philadelphia, Pa., for plaintiff.

National Employment Law Project, Inc., New York City, Merrick T. Rossein, Deborah Bachrach, for intervenor-plaintiff.

Dublirer, Haydon, Straci & Victor, Harold Dublirer, New York City, for defendants.

ROBERT J. WARD, District Judge.

Defendants, Sage Realty Corporation, Inc. ("Sage") and Angelo Palumbo ("Palumbo"), doing business as Monahan Commercial Cleaners, Inc. ("Monahan Cleaners") move pursuant to Rule 56(b), Fed.R.Civ.P., for summary judgment or, in the alternative, for an order pursuant to Rule 12(b), Fed.R.Civ.P., dismissing certain claims as time-barred and for an order, pursuant to Rule 12(f), Fed.R.Civ.P., striking a certain paragraph of plaintiff Margaret Hasselman's complaint. Plaintiffs Hasselman and the Equal Employment Opportunity Commission ("EEOC") cross-move pursuant to Rules 15(a) and 21, Fed.R.Civ.P., to amend their complaints to add Monahan Building Maintenance, Inc. ("Monahan Building") as a party defendant. For the reasons hereinafter stated, defendants' motion is denied and plaintiffs' motions are granted.

Margaret Hasselman was employed as a lobby attendant in an office building located at 711 Third Avenue in Manhattan, from February, 1973 until June, 1976. The building was managed by defendant Sage. Ms. Hasselman was hired by Sage in January, 1973, and placed on the payroll of National Cleaning Contractors ("National") until November 1, 1975, when she was placed on the payroll of defendant Monahan Cleaners. Defendant Sage trained Ms. Hasselman, established her job duties, and supervised her day-to-day work. In addition, Sage selected the uniforms for the lobby attendants, issuing new uniforms every six months.

On June 28, 1976, Ms. Hasselman filed a charge with the EEOC's New York District Office, alleging that defendants Sage and Monahan Cleaners discriminated against her because of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). The EEOC, after investigation, found reasonable cause to believe that defendants Sage and Monahan Cleaners had engaged in unlawful employment practices in violation of Title VII and, on September 29, 1978, commenced this action.

Plaintiff Hasselman moved to intervene as a party plaintiff on October 30, 1978. On November 27, 1978, the Court granted her motion and on January 10, 1979 she filed her complaint. The complaint alleges that defendants maintained a continuous policy of sex discrimination from Ms. Hasselman's hiring in January, 1973 until June, 1976, when the defendants allegedly required her to wear a revealing and provocative uniform which subjected her to repeated and abusive sexual harassment. The uniform was known as the Bicentennial uniform. The complaint further asserts that when Ms. Hasselman refused to wear it she was fired.

Defendants argue that there are no material facts in dispute and that they are entitled to summary judgment as a matter of law. They assert that requiring Ms. Hasselman to wear the Bicentennial uniform did not offend propriety or constitute discrimination based on sex within the meaning of Title VII. Defendants also assert that Sage is not a joint employer with Monahan Cleaners for purposes of Title VII. In addition, defendants contend that insofar as the complaint allegations concerning the hiring of Ms. Hasselman in January, 1973 and the modeling of a uniform in October, 1974 address events which occurred over 18 months before the plaintiff's EEOC charge was filed, these allegations are untimely under section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e). They also argue that the reference in plaintiff's complaint to the EEOC's determination that defendants violated Title VII should be stricken on the grounds that it is immaterial, irrelevant, and prejudicial to the defendants.

█ Plaintiffs, in turn, assert that inasmuch as there are material facts in dispute with respect to whether the defendants required plaintiff to wear a provocative and revealing uniform which subjected her to sexual harassment in violation of Title VII, defendants' motion for summary judgment must be denied. With respect to defendants' motion to dismiss and strike, plaintiffs contend that the allegations of discriminatory acts occurring in early 1973 and October 1974 are not time-barred because they were part of a continuing policy of sex discrimination and that the request that the complaint reference to the EEOC determination be stricken is untimely and without basis.

Summary judgment is to be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Securities Exchange Commission v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978); *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). In evaluating such a motion the Court cannot try issues of fact, it can only determine whether there are issues to be tried after resolving all ambiguities and drawing all reasonable inferences in favor of the non-movant. *Heyman v. Commerce & Indus. Ins. Co., supra.* Moreover, the burden is on the moving party to establish that no relevant facts are in dispute. *Id.* Applying this standard to the case at bar, the Court concludes that summary judgment is inappropriate.

Section 703(a) of Title VII provides:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e–2(a).

This prohibition was "intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Sprogis v. United Air Lines*, 444 F.2d 1194, 1198 (7th Cir.), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); *see also City of Los Angeles v. Manhart*, 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 1375, 55 L.Ed.2d 657 (1978). Thus, no matter what form the sex-based or sex-stereotyped decision may take, when it operates as an impediment to employment opportunity for women, Title VII requires its elimination.

Plaintiffs contend, *inter alia*, that defendants discriminated against Margaret Hasselman on the basis of sex by requiring her to wear the Bicentennial uniform and by discharging her when she refused to wear it. They assert that this uniform was re-

vealing and provocative and, on the two days on which she wore it, subjected her to repeated sexual harassment. Plaintiffs also argue that the uniform requirement was sex-based and that, but for the fact that Ms. Hasselman is a woman, she would not have been required to expose her body and endure the public's sexual harassment as a term and condition of her employment. Finally, they contend that the uniform requirement bore no relation to her job duties but was simply an onerous and irrational condition imposed upon her employment which constituted sex discrimination in violation of Title VII.

■ In order to state a claim under section 703, 42 U.S.C. § 2000e–2(a), a plaintiff must establish that a term or condition of employment had been imposed and that this term or condition was imposed by the employer on the basis of sex. *Tomkins v. Public Service Electric & Gas Co.*, 568 F.2d 1044, 1046 (3rd Cir. 1977); *Barnes v. Costle*, 561 F.2d 983, 989 & n. 49 (D.C.Cir.1977). Plaintiffs here have either established the elements required to make a *prima facie* showing of a section 703 violation or, at a minimum, raised factual questions with respect to these elements which preclude summary judgment.

The complaint alleges that defendants' uniform requirement is sex-based; affidavits and depositions have been submitted by plaintiffs to support this claim. A disputed issue of fact, however, apparently exists as to whether the Bicentennial uniform was short and revealing on Ms. Hasselman. Plaintiffs contend that photographic exhibits submitted in opposition to defendants' motion fairly and accurately depict the manner in which the uniform looked on Ms. Hasselman. Defendants apparently dispute the accuracy of the photographs. An additional question of fact exists as to whether a new and larger uniform was made for Ms. Hasselman; plaintiffs dispute defendants' assertion that such a uniform was made. There is apparently no dispute, however, that Ms. Hasselman was sexually harassed when she wore the Bicentennial uniform, that no male personnel were hired for lobby attendant positions after 1975 and that no male personnel were ever required to wear revealing or provocative uniforms at any time. Thus, there would, at the very least, appear to be disputed issues of fact with respect to the first element of plaintiffs' claim.

With respect to the second of the three required elements for stating a *prima facie* case of sex discrimination, that the condition be imposed by the employer, there apparently is no dispute that defendant Sage selected the Bicentennial uniform and both Sage and Monahan Cleaners insisted that Ms. Hasselman wear the uniform. It is also undisputed that both defendants continued to insist that she wear the uniform, even after they were told about the harassment that she was subjected to when she wore it. The facts underlying the question of defendant Sage's precise degree of control over Ms. Hasselman's employment, however, are in dispute.

The facts relevant to the final element required to demonstrate a *prima facie* case of sex discrimination, that the conduct at issue affect the terms and conditions of the plaintiff's employment, are also at least partly disputed. Plaintiff Hasselman contends that she was discharged when she refused to wear the Bicentennial uniform; defendants assert that she quit. In any event, even if plaintiff Hasselman were not discharged, the uniform requirement, according to plaintiffs' allegations, had an adverse, discriminatory impact on the terms and conditions of Hasselman's employment in violation of Title VII.

In sum, inasmuch as there are factual issues in dispute with respect to the elements of plaintiffs' *prima facie* showing of sex discrimination and those facts not in dispute would tend to support plaintiffs' claims, defendants' motion for summary judgment must be denied.

The Court finds unavailing defendants' reliance on a number of "grooming" cases for the principle that a uniform requirement does not involve discrimination in employment on the basis of sex. These cases merely hold that nothing in Title VII pro-

hibits an employer from making reasonable employment decisions based on factors such as grooming and dress. *See, e. g., Barker v. Taft Broadcasting Co.,* 549 F.2d 400 (6th Cir. 1977); *Earwood v. Continental Southeastern Lines, Inc.,* 539 F.2d 1349 (4th Cir. 1976); *Longo v. Carlisle-De Coppet & Co.,* 537 F.2d 685 (2d Cir. 1976); *Knott v. Missouri Pacific Railroad,* 527 F.2d 1249 (8th Cir. 1975); *Willingham v. Macon Telegraph Publishing Co.,* 507 F.2d 1084 (5th Cir. 1975); *Dodge v. Giant Food, Inc.,* 488 F.2d 1333 (D.C.Cir.1973); *Fagan v. National Cash Register Co.,* 481 F.2d 1115 (D.C.Cir. 1973); *La Von Lanigan v. Bartlett and Co. Grain,* 466 F.Supp. 1388 (W.D.Mo.1979). None of these cases supports the proposition that an employer has the unfettered discretion under Title VII to require its employees to wear *any* type of uniform the employer chooses, including uniforms which may be characterized as revealing and sexually provocative.

■ Defendants' contention that the Court lacks jurisdiction to consider the discriminatory acts of the defendants which allegedly occurred in January, 1973 and October, 1974 must also be rejected. Plaintiffs allege that these discriminatory acts were part of an ongoing sexually discriminatory policy which culminated in plaintiff Hasselman's discharge in June 1976. Under the doctrine of a "continuing violation" a "continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days after the *last occurrence* of an instance of that policy." *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir. 1978); *accord, Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 246 (3rd Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Macklin v. Spector Freight System, Inc.,* 478 F.2d 979, 986–90 (D.C.Cir.1973). Insofar as it is undisputed that the last act of this alleged discriminatory pattern is within the 180-day statute of limitations period of section 706(e) of Title VII, the Court has jurisdiction over each allegedly discriminatory incident under the theory of a continuing violation. *Acha v. Beame, supra,* 570 F.2d at 63–65; *Egelston v. State University College*

at *Genesco,* 535 F.2d 752, 755 (2d Cir. 1976). It may well be, of course, that plaintiffs will not be able to demonstrate that these alleged incidents were part of a continuing policy of discrimination. In the Court's view, however, this issue will be better resolved at trial than upon the present record.

Defendants also argue as an additional basis for at least partial summary judgment, that Sage is not a "joint employer" with Monahan Cleaners of the latter's employees within the meaning of Title VII. Although section 703(a) makes unlawful only discriminatory employment practices of an "employer" this term has been construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an individual's compensation, terms, conditions, or privileges of employment. *Spirt v. Teachers Insurance and Annuity Association,* 475 F.Supp. 1298, 1307–08 (S.D.N.Y.1979); *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1341–42 (D.C.Cir.1973); *Puntolillo v. New Hampshire Racing Comm'n,* 375 F.Supp. 1089, 1092 (D.N.H.1974); *Hairston v. McLean Trucking Co.,* 62 F.R.D. 642, 655–56 (M.D.N. C.1974), *vacated on other grounds,* 520 F.2d 226 (4th Cir. 1975). *See also Manley v. Mobile County,* 441 F.Supp. 1351, 1355–56 (S.D.Ala.1977); *Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063, 1072–73 (D.Me.1977).

■ Holding responsible those who control the aspects of employment accorded protection under Title VII is consistent with the congressional intent both that the Act's effectiveness not be frustrated by an employer's delegating authority for its employees' compensation, terms, conditions, or privileges of employment to third parties, *see City of Los Angeles v. Manhart, supra,* 435 U.S. at 718 n. 33, 98 S.Ct. at 1380, and that the Act be interpreted liberally in order to achieve its remedial purpose of eradicating discrimination in employment. *See, e. g., Silver v. Mohasco Corp.,* 602 F.2d 1083, 1087 (2d Cir. 1979); *Craig v. Department of Health, Education & Welfare,* 581 F.2d 189,

193 (8th Cir. 1978); *Bell v. Brown*, 557 F.2d 849, 853 (D.C.Cir.1977); *Puntolillo v. New Hampshire Racing Comm'n, supra*, 375 F.Supp. at 1091–92.

In the present case, although Ms. Hasselman was on the payroll of National from January, 1973 through October 31, 1975 and Monahan Cleaners from November 1, 1975 until her discharge on June 4, 1976, Sage apparently exercised considerable control over the terms and conditions of her employment. Sage hired, trained, and supervised Ms. Hasselman, and according to plaintiffs, ultimately ordered her discharge. Defendants dispute many of these facts; it is undisputed, however, that Sage controlled the uniform policy challenged here. In view of this undisputed fact and the various disputed issues of fact the Court concludes that it cannot determine as a matter of law upon a motion for summary judgment that Sage is not an agent or joint employer within the meaning of Title VII or liable with Monahan Cleaners for any violation of section 703(a).

With respect to plaintiffs' motions to amend their complaints to add Monahan Building as a party defendant it is clear that under the terms of Rule 15(a), Fed.R. Civ.P., leave to amend a complaint "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Where there has been "undue delay, bad faith, or dilatory motive," *Foman v. Davis, supra*, or where permitting amendment would have "required extensive preparation and consumed voluminous amounts of trial time to the detriment of a speedy resolution of the case," *Izaak Walton League of America v. St. Clair*, 497 F.2d 849, 854 (9th Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974); *Data Digests, Inc. v. Standard & Poor's Corp.*, 57 F.R.D. 42, 45 (S.D.N.Y.1972), however, amendment should be denied. Moreover, the granting or denial of leave to amend is within the discretion of the district court, and should be determined so as "to secure the just, speedy, and inexpensive determination of every action." *Foman v. Davis, supra*, quoting from Fed.R.Civ.P. 1.

In the case at bar, defendants assert that amendment should be denied because: (1) there was undue delay in bringing the motion; (2) Monahan Building cannot be joined as a successor corporation because its predecessor, Monahan Cleaners, named in the complaint as Angelo Palumbo d/b/a Monahan Commercial Cleaners, Inc., is not a party to this action; (3) Monahan Building is completely innocent of any employment discrimination against plaintiff Hasselman; and (4) inasmuch as Monahan Building was not named in the action within ninety days of the receipt of the EEOC's "right to sue letter" by plaintiff Hasselman, jurisdiction over this party was lost. None of these arguments warrants denial of plaintiffs' motions to amend.

As plaintiffs argue, undue delay is delay in going to trial which prejudices the named defendants. *See, e. g., Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126–27 (2d Cir.) *cert. denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); *Kaminsky v. Abrams*, 41 F.R.D. 168, 170–71 (S.D.N.Y.1966). There can be no credible argument that either Sage or Monahan Cleaners will be prejudiced in the instant case. The Court finds defendants' additional argument that Monahan Building cannot be joined as a successor corporation because its predecessor is not a party to the action, frivolous. By stipulation submitted to the Court on July 7, 1979 the parties agreed to correct the complaint caption from Angelo Palumbo d/b/a Monahan Commercial Cleaners, Inc. to read Monahan Commercial Cleaners, Inc. The predecessor corporation is thus a party to the lawsuit. Similarly unavailing is Monahan Building's argument that it should not be joined because it is not liable to plaintiff as a successor corporation. Determination of the liability of a proposed additional party should not be made upon a motion to amend but rather after addition of the party at trial. Defendants fare no better with their final argument that the failure to name Monahan Building as a party in this suit within ninety days of Ms. Hasselman's receipt of a right to sue letter bars suit against that entity now. Insofar

**372**

as the successor Monahan Building was not in existence at the time the EEOC concluded its investigation of plaintiff Hasselman's charges and plaintiffs apparently did not learn of the existence of the successor until after the complaint had been filed, the failure to join Monahan Building as a party within ninety days of the receipt of the notice of right to sue does not bar its joinder now. *See Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1093 (6th Cir. 1974). Accordingly, the Court in the exercise of its discretion grants plaintiffs' motions to add Monahan Building as a party defendant.

▪ Defendants' motion to strike the probable cause allegation of plaintiff Hasselman's complaint as immaterial, irrelevant and prejudicial is also denied. Rule 12(f), Fed.R.Civ.P., requires that such a motion be made before an answer is interposed. The instant motion is therefore untimely. In any event, even if the motion were timely the Court is of the view that insofar as the EEOC's determination of probable cause bears considerable relevance to the subject matter of the litigation, little purpose would be served by striking references to it from the complaint at this time.

Accordingly, plaintiffs' motions are granted and defendants' motion is denied.

It is so ordered.